**SOUTHERN RAILWAY COMPANY,**
Appellant,

v.

**TENNESSEE VALLEY AUTHORITY,**
Appellee.

No. 18611.

United States Court of Appeals
Fifth Circuit.

Sept. 7, 1961.

George F. Maynard, Jos. F. Johnston, Birmingham, Ala., C. A. Poellnitz, Florence, Ala., for appellant.

Charles J. McCarthy, Gen. Counsel, Thomas A. Pedersen, Asst. Gen. Counsel, M. G. Forster, Atty., TVA, Knoxville, Tenn., for appellee.

Before RIVES, CAMERON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

In this action the Tennessee Valley Authority seeks a declaration of its rights under the Tennessee Valley Authority Bridge Act [1] with regard to certain proposed alterations of the Southern Railway Company's bridge across the Tennesse River at Florence, Alabama, as part of a TVA navigation improvement project. We hold that the TVA Bridge Act is applicable and affirm the judgment below.

TVA and Southern failed to agree upon a contract for the necessary alterations to the bridge. In accordance with the provisions of the TVA Bridge Act, TVA filed a complaint with the district court for the Northern District of Alabama asking for a declaration of its rights and for an apportionment of costs between the TVA and Southern. The complaint alleges that the navigational improvement project, including the realignment and widening of the navigation channel under the Southern bridge to provide a

1. This act reads, in part:
"Whenever, as the result of the construction of any dam, reservoir, or other improvement under the provisions of this chapter, or amendments thereto, any bridge, trestle, or other highway or railroad structure located over, upon, or across the Tennessee River or any of its navigable tributaries, including approaches, fenders, and appurtenances thereto, is endangered or otherwise adversely affected and damaged, including any interference with or impairment of its use, to the extent that protection, alteration, reconstruction, relocation, or replacement is necessary or proper to preserve its safety or utility or to meet the requirements of navigation or flood control, or both, the owner or owners of such bridge, trestle, or structure shall be compensated by the Tennessee Valley Authority in the sum of the reasonable actual cost of such protection, alteration, reconstruction, relocation, or replacement [Act of November 21, 1941, 55 Stat. 773, 16 U.S.C.A. § 831c-1 (1958)]."

horizontal clearance of 350 feet together with adequate vertical clearances, will require the removal, alteration, or replacement of various spans, piers, and abutments of the bridge, and that the bridge will thus be endangered or otherwise be adversely affected and damaged to the extent that alteration thereof will be necessary to preserve its safety or utility and to meet the requirements of navigation.

Southern denies that any alteration of the bridge is required under the TVA Bridge Act. On a pre-trial hearing, the court set the cause down for trial on the following issue only:

"As the result of the construction by the Tennessee Valley Authority of a new lock at Wilson Dam and the approach channel thereto, was defendant Southern's bridge across the Tennessee River endangered or otherwise adversely affected to the extent that reconstruction is necessary or proper to preserve its safety or utility or to meet the requirements of navigation or flood control, or both."

The trial judge separated that issue from the issue relating to apportionment of the costs, to be tried later at the convenience of the parties and the court. F.R.Civ.P. rule 42(b), 28 U.S.C.A.

May 6, 1960, the district court entered an order holding that "the proposed project, including the alterations of defendant's bridge, is a necessary and proper improvement" under the provisions of the Tennessee Valley Authority Act of 1933 and the TVA Bridge Act, and that the court has jurisdiction to order the necessary alterations and to apportion the costs in accordance with these laws.

The appellant contends that the Tennessee Valley Authority Bridge Act is not applicable to the facts of this case, because the record shows that the appellant's bridge is not endangered, damaged, or adversely affected as a result of the construction of the new locks at Wilson Dam and the new approach channel;

on the contrary, any danger formerly existing has been lessened. This rests on the theory that in determining the applicability of the Act the test is whether the improvement endangers or affects the bridge adversely, not whether the proposed project is a necessary and proper navigation improvement and the bridge a navigational hazard. Inquiry into the status of the bridge as a navigational hazard, so the argument runs, falls within the terms of the Truman-Hobbs Act vesting in the Secretary of the Army authority over bridges across the Tennessee River, not the TVA Bridge Act.

The weakness in Southern's argument is that it fails to recognize that the project necessarily encompasses substantial alterations of the bridge. The court below expressly found:

"TVA's project includes the realignment, widening and deepening of the navigation channel under the defendant's bridge to increase the horizontal clearance from 100 feet to 350 feet and to provide vertical clearance to elevation 476 feet above mean sea level."

Completion of the new and larger lock at Wilson Dam requires dredging a new, wider, and deeper approach channel through the very part of the stream on which the pivot pier of Southern's bridge now rests. The bridge now consists of a swing span supported on a masonry pier leaving a clear channel only 125 feet wide. The new approach channel will be 350 feet wide. The purposes of the improvements cannot be accomplished and the project cannot be completed until Southern's pivot pier is removed and the channel widened. Such a project is fully within the authority of the TVA.

The TVA Bridge Act came into being because the mechanics of the Truman-Hobbs Act were not well suited for settling claims of bridge owners affected by TVA improvements. Before 1940 the owner of a bridge across a navigable stream was not entitled to any compensation for the alteration or removal of the bridge as a result of navigation needs.

The Truman-Hobbs Act[2] provides that whenever the Secretary of the Army requires an existing bridge to be altered the bridge owner shall be charged only a portion of the costs equal to the benefits that will accrue as a result of the alterations. The TVA Bridge Act extends the rights of bridge owners by imposing on the TVA an obligation to compensate the owner whenever a bridge is endangered or adversely affected or damaged by TVA improvements, and it also provides special machinery for assessing compensation that is more favorable to a bridge owner than condemnation proceedings under the TVA Act.

■ It is undoubtedly true, as Southern points out, that the TVA Bridge Act does not delegate to the TVA the police power to require alteration of a bridge simply because it interferes with navigation. But the TVA's authority to construct improvements rests on the Tennessee Valley Authority Act, not the TVA Bridge Act. Section 4(j) of the Tennessee Valley Authority Act directs the TVA to provide a navigable channel from Knoxville to the mouth of the River and expressly authorizes it to construct "navigation projects, and incidental works in the Tennessee River".[3] Congressional appropriation acts for TVA improvements specifically included funds for the alteration of the Southern bridge as part of the Wilson Lock Project.[4]

Summarizing, we hold that the TVA Bridge Act applies to the facts of this case. Within the meaning of that act, a railroad bridge is endangered or affected adversely whenever the bridge must be altered in order for the TVA to complete improvements authorized under the Tennessee Valley Authority Act, even though such alterations meet navigation needs.

■ It is not clear whether under the TVA Bridge Act an apportionment of costs must be made in advance of any alteration work on a bridge. Southern argues that common sense and the language of the act indicate that the court should first determine who is to pay for the vast expenses involved. TVA argues that the difficulties involved and the costs cannot be known until the work is complete. We find nothing in the history or language of the act that is very helpful on this point. Essentially, the question is one that seems to depend on the facts of each case, a matter to be determined by the trial judge exercising a sound discretion. We hold that under Rule 42(b), F.R.Civ.P., the trial court's severance of the issue of apportionment was not an abuse of discretion.

The TVA is authorized to proceed now to make the necessary alterations in Southern's bridge at Florence, Alabama.

The judgment is affirmed.

CAMERON, Circuit Judge, concurs in the result.

2. 54 Stat. 497 (1940), 33 U.S.C.A. §§ 511–524.

3. Section 4(j) of the Tennessee Valley Authority Act, 48 Stat. 61 (1933), as amended, 16 U.S.C.A. § 831c(j) (1958).

4. "The relocated downstream approach channel to the new lock will affect navigation conditions at the Southern Railway Bridge at Florence, Ala. Navigation requirements can be met by replacement of the existing swing span, which provides an effective width of only about 100 feet, by a vertical lift span, with an effective width of 350 feet. * * * The scope of the Wilson Lock project has been changed to include alteration of the bridge and the total cost estimate has been increased accordingly from $35 million to $38 million" (Hearings Before the Subcommittee of the House Committee on Appropriations on Public Works Appropriations for 1960, 86th Cong., 1st Sess., pt. 2, at 797–798 (1959). Funds based on this presentation were included in the Public Works Appropriation Act, 1960, 73 Stat. 491 (1959) [43 U.S.C.A. § 377a]."